NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MARGARET SMITH,                          :

          Plaintiff,                  :

             v.                      :        Civil Action No. 04-2616 (JAG)

JO ANNE B. BARNHART,                     :        **OPINION**

Commissioner of Social Security          :

          Defendant.                  :


**GREENAWAY, JR., U.S.D.J.**


## INTRODUCTION

Plaintiff Margaret Smith ("Plaintiff") seeks review of the Commissioner of Social Security's (the "Commissioner") decision denying her application for Disability Insurance Benefits ("DIB"),[1] pursuant to 42 U.S.C. § 405(g).[2]  Plaintiff asserts that the decision of the Administrative Law Judge ("ALJ") and the Social Security Appeals Council's ("Appeals Council") affirmation of that decision are erroneous in law and fact and unsupported by substantial evidence in the record, and should therefore be reversed or, in the alternative,

---

[1] DIB is a program of social insurance under which covered employees and their employers pay taxes into a special fund administered separately from the general federal revenues to purchase protection against the economic consequences of old age, disability, and death.  DIB provides benefits to such persons who have become disabled.

[2] This section of the Social Security Act (hereinafter the "Act") provides that any individual who was a party to a hearing before the Secretary may commence a civil action within 60 days after the Secretary's final determination.  The appropriate forum for this action is the district court of the United States judicial district in which the plaintiff resides.  42 U.S.C. § 405(g).

remanded to the Commissioner for a new hearing.  For the reasons set forth in this opinion, this

Court affirms the Commissioner's final decision denying benefits.

## PRIOR PROCEEDINGS

Plaintiff filed an application for DIB on August 8, 1996, alleging disability as of

November 12, 1995, resulting from severe medical impairments, including orthopedic and

neurological conditions.  (Tr. 91-94.)[3]  Plaintiff's application was denied initially and on

reconsideration.  Plaintiff filed a Request for Hearing (Tr. 79), and a hearing was held on January

7, 1998 before the Honorable Michael H. Noorigian ("ALJ Noorigian").  An unfavorable

decision was issued on March 25, 1998.  (Tr. 11-15.)  The following is a summary of the

findings:

1.   The claimant met the disability insured status requirements of the Act on November 12, 1995, the date that the claimant stated that she became unable to work, and continued to meet them through December 31, 2000.

2.   The claimant had not performed substantial gainful activity since her alleged onset date.

3.   The medical record established that the claimant had severe strains involving her thoracic and cervical spine, but she did not have impairments that met or equaled the severity of the Listings of Impairments.

4.   The claimant's complaints could not be accepted as credible to the extent alleged.

5.   The claimant retained the capacity to perform light work.

6.   The claimant was able to perform her past relevant work in a cafeteria.

7.   The claimant was not under a "disability" as defined in the Act, at any time through the date of this decision (20 C.F.R. § 404.1520 (b)).

---

[3] The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record including any evidence used to formulate her conclusion or decision.  42 U.S.C. § 405(g). "Tr." refers to said transcript.

(Tr. 14-15.)  Based on the aforementioned findings, ALJ Noorigian concluded that Plaintiff was not entitled to a period of disability or disability insurance benefits under Sections 216 (i) and 223, respectively, of the Social Security Act.  (Tr. 15.)

On April 7, 1998, Plaintiff filed for review by the Appeals Council.  (Tr. 6.)  On April 27, 2001, the Appeals Council denied claimant's request for review.[4]  (Tr. 4-5.)  An action was subsequently commenced in district court and, on January 10, 2003, a consent order to remand was entered.  On October 2, 2003, the Appeals Council issued an order remanding the matter back to the ALJ for a new hearing.  (Tr. 207-08.)  In the meantime, Petitioner filed a second application, in March 2000, alleging disability since March 26, 1998, the day after the prior hearing decision. (Tr. 213-27.)  The Social Security Administration issued a decision on the subsequent application finding that Petitioner had been disabled since December 1, 2000.  (Tr. 207-08.)

On January 22, 2004, in response to the remand order, a new hearing was held before ALJ Noorigian on the issue of disability between November 12, 1995, and December 1, 2000. (Tr. 187-202.)  On February 18, 2004, an unfavorable decision was again issued.  (Tr. 180-84.) The following is a summary of the findings:

_____

[4] Social Security Administration regulations provide that the Appeals Council will grant a request for review where: (1) there appears to be an abuse of discretion by the Administrative Law Judge; (2) there is an error of law; (3) the Administrative Law Judge's action, findings, or conclusions are not supported by substantial evidence; or (4) there is a broad policy or procedural issue which may affect the general public interest. 20 C.F.R. § 416.1470 (2003).  The regulations also provide that where new and material evidence is submitted with the request for review, the entire record will be evaluated, and review will be granted, where the Appeals Council finds that the Administrative Law Judge's actions, findings, or conclusion is contrary to the weight of the evidence currently on record.  20 C.F.R. § 416.1470.

1.    The claimant met the insured status on her alleged onset date of November 12, 1995.

2.    Based upon a subsequent application claimant was found disabled beginning December 1, 2000.

3.    For the period from November 12, 1995, through December 1, 2000, which is the period at issue, the claimant did not engage in substantial gainful activity.

4.    The claimant's impairments considered "severe" are cervical and thoracic strains.

5.    The medically determinable impairments, singularly or in combination, do not meet or medically equal the listed impairments in Appendix 1, Subpart P.

6.    The claimant's complaints cannot be accepted as credible to the extent alleged.

7.    The claimant retains the residual functional capacity for "light work."

8.    The claimant's past relevant work as a cafeteria attendant did not require the performance of work-related activities precluded by her residual functional capacity.

9.    The claimant was not under a "disability" for the period from November 12, 1995, through to December 1, 2000.

(Tr. 183-84.)  Based on the aforementioned findings, ALJ Noorigian concluded that, for the period between November 12, 1995, and December 1, 2000, Plaintiff was not entitled to disability or disability insurance benefits under Sections 216 (i) and 223, respectively, of the Social Security Act, as amended.  Written exceptions were submitted to the Appeals Council on March 2, 2004.  (Tr. 185-86.)  On April 9, 2004, the Appeals Council denied this appeal (Tr. 173-76) and Plaintiff subsequently filed the instant action, seeking review of the Commissioner's determination, pursuant to 42 U.S.C. § 405(g).

-4-

# FACTS

## A. Background

Plaintiff is currently fifty-nine years old and has a tenth grade education. (Tr. 24.) Plaintiff's past relevant work experience is as a cafeteria attendant. (Tr. 24.) Plaintiff's last job entailed manning the cash register, putting together the salad bar, mopping floors, stocking counters, and going through stock and gathering boxes. (Tr. 25.) Prior to her work as a cafeteria attendant, Plaintiff worked as a home health aide feeding, bathing, and caring for a child with severe cerebral palsy. (Tr. 26-28.)

Plaintiff alleges disability since November 1995 due to a motor vehicle accident. (Tr. 20-21, 29.) Specifically, Plaintiff claims disability due to injury to the thoracic area of her back, as well as to her shoulder blades. (Tr. 29.)

## B. Medical Evidence

Dr. Albert Mylod's Expert Testimony

Dr. Mylod, a board certified orthopedic surgeon, testified at Plaintiff's behest, as an expert on the orthopedic nature of her disability, at the ALJ hearing on January 7, 1998. (Tr. 53-64.) Dr. Mylod had testified, to date, at more than two thousand hearings, as both a medical expert and medical advisor. (Tr. 54.) He based his opinions upon Plaintiff's medical records and her subjective complaints. Id. He did not personally examine Plaintiff. Dr. Mylod opined that based on the MRI conducted in July 1996, Plaintiff suffered from spondylitic[5] ridges, or a

---

[5] Spondylitis is "an inflammation of any of the vertebrae, usually characterized by stiffness and pain. The condition may be the result of traumatic injury to the spine." Mosby's Medical, Nursing, and Allied Health Dictionary 1619 (6th ed. 2002) (hereinafter "Mosby's").

degenerative change indenting the spinal cord at T6-T7, T7-T8.[6]  (Tr. 54-55.)  Dr. Mylod further

opined that Plaintiff had classic signs of fibromyalgia,[7] as indicated by her sleep disturbances,

crying, and fifteen pound weight loss.  (Tr. 55.)  Dr. Mylod noted that, despite Plaintiff's

impairments, she did not meet or equal any medical listing in the Listing of Impairments.  (Tr.

56.)  He did testify that based on both subjective and objective evidence in the record, Plaintiff

would have trouble walking more than one and a half blocks, standing still for more than fifteen

minutes, and sitting for six hours.  (Tr. 56-59.)  Dr. Mylod testified that he believed that the type

of pain described by Plaintiff was supported by the record.  (Tr. 60.)

1.    Examination by Dr. David Brown

        In a report dated September 23, 1996, Dr. Brown, a doctor of osteopathy, described his

consultative examination with Plaintiff.  (Tr. 156-58.)  He noted that actions of the cervical and

lumbosacral[8] spine elicited some pain.  (Tr. 157.)  Dr. Brown also noted that there was tenderness

on palpation on very light touch over the cervical paravertebral,[9] the upper trapezius muscles, the

thoracic[10] paravertebrals, and the lumbar spine paravertebrals bilaterally.  Id.  Dr. Brown further

noted that Plaintiff had full range of motion of the shoulders, elbows, wrists, hips, knees, and

---

        [6] The letter 'T' followed by a numeral indicates the symbol for a thoracic nerve.  Mosby's
at 1676.

        [7] Fibromyalgia is "a form of nonarticular rheumatism characterized by musculoskelatal
pain, spasms, stiffness, fatigue, and severe sleep disturbance."  Mosby's at 676.

        [8] Lumbosacral means "pertaining to the lumbar vertebrae and the sacrum."  Mosby's at
1026.

        [9] Paravertebral means "pertaining to the area alongside the spinal column or near a
vertebra."  Mosby's at 1282.

        [10] Thoracic means "pertaining to the thorax."  Mosby's at 1704.

ankles.  Id.

2.      Examination by Dr. Joseph Schullman

Dr. Schullman, a medical doctor, began caring for Plaintiff shortly after her accident in November 1995 through February 1996.  (Tr. 154-55.)  Dr. Schullman recommended physical therapy for Plaintiff.  (Tr. 154.)  Plaintiff told Dr. Schullman that she felt up to sixty-five percent better, but that she had both good and bad days.  Id.  Dr. Schullman noted that his records indicated that Plaintiff was to return to work on February 21, 1996, to moderate duty and that she reported that she had gone back to work on February 26, 1996, for three hours per day.  (Tr. 154-55.)  According to Dr. Schullman's report, Plaintiff did return to work, but was in too much pain and too upset due to her mother's illness to continue.  Id.

3.      Examination by Dr. Gregory Gallick

Dr. Gallick, an orthopedic surgeon, evaluated Plaintiff multiple times between March 8, 1996 and August 2, 1996.  (Tr. 167-70.)  Dr. Gallick noted that Plaintiff had exquisite tenderness in the peritrapezial muscles and in the thoracic spine, minimal tenderness of the cervical spine, and no tenderness in the lumbar spine.  (Tr. 167.)  Dr. Gallick found, upon examination of Plaintiff's MRI, that "[t]here was no evidence of disc herniation, but the cervical lordosis[11] was reversed, which was suggestive of muscular spasm."  (Tr. 169.)  A subsequent MRI of the thoracic spine indicated that Plaintiff had "small spondylitic bony ridges, minimally indenting the ventral aspect of the spinal cord at T6-T7 and T7-T8."  Id.  Upon meeting with Plaintiff several times over approximately two months, and having seen only minimal improvement, Dr. Gallick

_____

[11] Lordosis is "an abnormal anterior concavity of the lumbar part of the back."  Mosby's at 1021.

told Plaintiff that she may have to learn to live with her problems.  Id.  He also told her that he

was unsure of how much help physical therapy or surgical intervention would be, and that her

problems may be permanent.  Id.  Dr. Gallick further stated that Plaintiff's problem was very

serious and that she is completely unable to do even light duties for more than one or two hours.

(Tr. 170.)

## C. Plaintiff's Testimony at January 7, 1998 ALJ Hearing

At the first hearing before ALJ Noorigian,[12] Plaintiff testified that she was fifty-two years

old and had completed only the tenth grade.  (Tr. 24.)  She stated that her past work experience

was as a cafeteria attendant and as a home health aide to a child with severe cerebral palsy.  (Tr.

25-28.)

Plaintiff testified that she had been suffering from severe and constant back and shoulder

problems since being involved in a motor vehicle accident in September 1995.[13]  (Tr. 29-30.)

Plaintiff stated that she is in constant mild to moderate pain (Tr. 31), and that certain activities

result in her pain intensifying and becoming severe.  (Tr. 30-33.)  These activities include

standing for more than five minutes, walking more than half a block, sitting for more than ten

minutes, and lifting more than five pounds.  Id.  Plaintiff stated that, since the accident, she has

had trouble sleeping and has lost ten to fifteen pounds.  (Tr. 33-34.)

Plaintiff testified that subsequent to the accident she began to see a physical therapist, and

---

[12] Plaintiff did not testify in the January 22, 2004 hearing, which was held in response to the remand order from the Appeals Council.

[13] On page 29, the record indicates that the accident occurred in September 1995. However, throughout the rest of the record, reference is to the accident occurring in November 1995.

that the therapy initially helped her.  (Tr. 35-36.)  Plaintiff was, however, unsatisfied with the

extent of the improvement, and began to see an orthopedic surgeon, Dr. Gallick. (Tr. 36.)  Dr.

Gallick sent Plaintiff back to physical therapy, which Plaintiff claims only helped to a small

degree.  (Tr. 36-37.)  Plaintiff stated that she eventually ceased physical therapy because her

condition was not getting better.  Plaintiff testified that Dr. Gallick prescribed 800 milligrams of

Motrin three times per day for her, stating that he could do no more for her pain.  (Tr. 37-39, 45.)

Plaintiff testified that she has attempted to manage her pain by limiting her activities.  (Tr.

43.)  Plaintiff further testified that in addition to taking the Motrin as prescribed, she also takes

Motrin as needed when her pain becomes severe due to certain activities.  (Tr. 47-49.)  Plaintiff

testified that the medication usually reduces her pain by twenty-five percent, and sometimes up to

fifty percent, but never fully alleviates her pain.  (Tr. 46-50.)  Plaintiff stated that she often feels

upset about her condition, and cries or feels depressed or angry as a result.  (Tr. 40-41.)

## DISCUSSION

### A. Statutory Standards

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. §

423(d)(5)(2000).  To qualify for SSI benefits, a claimant must first establish that he is needy and

aged, blind, or "disabled."  42 U.S.C. § 1381 (2000).  A claimant is deemed "disabled" under the

Act if he or she is unable to "engage in substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  See also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability

is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).  See also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002).  Finally,

while subjective complaints of pain are considered, they are not enough to establish disability.

42 U.S.C. § 423(d)(5)(A).  An impairment only qualifies as disabling if it "results from

anatomical, physiological or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

**B. The Five Step Evaluation Process and the Burden of Proof**

Determinations of disability are made by the Commissioner, pursuant to the five-step

process outlined in 20 C.F.R § 404.1520 (2003).  At the first step of the review, the

Commissioner must determine whether the claimant is currently engaged in substantial gainful

activity.[14]  20 C.F.R § 404.1520(b).  If a claimant is found to be engaged in such activity, the

claimant is not "disabled" and the disability claim will be denied.  Id.; Bowen v. Yuckert, 482

U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a

severe impairment.  20 C.F.R. § 404.1520(c).  An impairment is severe if it "significantly limits

[a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether

the claimant has a severe impairment, the age, education, and work experience of the claimant

will not be considered.  Id.  If the claimant is found to have a severe impairment, the

Commissioner addresses step three of the process.

---

[14] Substantial gainful activity is "work that involves doing significant and  productive
physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510
(2003).

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in Appendix I, Regulations No. 4. 20 C.F.R. § 404.1520(d). If the claimant's impairment(s) meets or equals one of the listed impairments he will be found disabled under the Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is unable to resume his past work, and his condition is deemed "severe" yet not listed, the evaluation moves to the final step. At the final step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual capacity. 20 C.F.R. § 404.1560(c)))(1) (2003). If the ALJ finds a significant number of jobs that claimant can perform, claimant will be found not disabled. Id.

## C. ALJ Noorigian's Findings

Subsequent to both the January 7, 1998 and the January 22, 2004 hearings, ALJ Noorigian performed the five-step evaluation process and concluded that Plaintiff is not disabled, as defined in 20 C.F.R. § 404.1520(b) for the period from November 12, 1995 through December 1, 2000. (Tr. 15, 184.) ALJ Noorigian first found that Plaintiff had not performed substantial gainful activity since November 12, 1995, the alleged onset date of disability. Id. Regarding steps two and three, ALJ Noorigian found that the medical record established that Plaintiff had severe strains involving her thoracic and cervical spine, but that she did not have impairments

-11-

that meet or equal the severity of the Listing of Impairments.  Id.

ALJ Noorigian found that the evidence established that Plaintiff has the capacity to perform light work during the time period at issue.[15]  Id.  He found that Plaintiff's complaints could not be accepted as credible to the extent alleged by Plaintiff.  Id.  In concluding his analysis of Plaintiff's claim at step four, ALJ Noorigian determined that Plaintiff is able to perform her past relevant work as a cafeteria attendant.  Id.

**D. Analysis**

Plaintiff contends that ALJ Noorigian's findings are not supported by substantial evidence.  Specifically, Plaintiff argues that, upon remand from the Appeals Council, ALJ Noorigian wrongly disregarded the opinions of her treating physician, Dr. Gallick, and orthopedic expert, Dr. Mylod.  Had ALJ Noorigian relied on the opinions of Drs. Mylod and Gallick, claims Plaintiff, then he would have found Plaintiff to be disabled as defined in the Act, and therefore eligible for disability insurance benefits.  The issue before this Court, therefore, is whether the Commissioner's decision that Plaintiff was not "disabled" between November 12, 1995, her alleged onset date, and December 1, 2000, is supported by substantial evidence in the record.  This Court finds that the evidence in the record supports ALJ Noorigian's determination that Plaintiff was not disabled within the meaning of the Act.

**1.      ALJ Noorigian's Ruling is Supported by Substantial Evidence**

This Court's review of the Commissioner's final decision is limited to a determination of whether ALJ Noorigian applied the proper legal standards in making his findings of fact and

_____

[15] Light work is defined as work which requires lifting and carrying objects weighing twenty pounds occasionally and ten pounds frequently, and standing, walking, and/or sitting for about six hours in an eight-hour workday.  20 C.F.R § 404.1567(b).

whether these findings are supported by substantial evidence as viewed in the record as a whole. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). If the Commissioner's decision is supported by "substantial evidence," this Court must affirm the decision. 42 U.S.C. §§ 405(g), 1383(c)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971). "Substantial evidence is such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Substantial evidence is defined as "more than a mere scintilla" of evidence, but may be "less than a preponderance of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (citation omitted). In reviewing the totality of the evidence, this Court may not re-weigh the evidence in the record, Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998), or "substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted), cert. denied, Williams v. Shalala, 507 U.S. 924 (1993). Therefore, when substantial evidence supports the ALJ's findings, the reviewing court must affirm the ALJ's holding, even if the evidence presented may also support a different conclusion. LaCorte v. Bowen, 678 F. Supp. 80, 84 (D.N.J. 1988).

Plaintiff asserts that the ALJ's findings are not supported by substantial evidence and fail to resolve the conflict created by countervailing evidence demonstrating that Plaintiff is limited to less than the full range of light work by her orthopedic impairment. Plaintiff specifically challenges the ALJ's alleged rejection of Dr. Mylod's testimony as the expert witness to the orthopedic impairment.

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). "The ALJ must consider all medical evidence in the record and provide adequate

explanations for disregarding or rejecting evidence, especially when the testimony of the claimant's treating physician is rejected." Claussen v. Charter, 950 F. Supp. 1287, 1292 (D.N.J. 1996). The Third Circuit advises that "treating physicians' reports should be accorded great weight especially 'when their opinions reflect expert judgment based on continuing observation of Plaintiff's condition over a prolonged period of time.'" Miller v. Barnhart, 2002 WL 32348504 (3d Cir. 2002) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)).

ALJ Noorigian relied heavily on the reports of Doctors Schullman and Brown – both of whom examined Plaintiff – to reach his determination that Plaintiff was able to perform light work, as defined in the Act. Dr. Schullman's report indicated that Plaintiff was improving with physical therapy, and that she felt she was sixty-five percent better, and "getting there." (Tr. 154.) The report did not note the presence of any muscle spasm or tenderness. Dr. Schullman's report also indicated that he expected Plaintiff to return to moderate work in February 1996. (Tr. 154.) ALJ Noorigian interpreted that information "as releasing claimant for 'moderate' work in February [] 1996." (Tr. 13.) Similarly, Dr. Brown reported no spasm or limitation in motion, nor did he indicate that Plaintiff lacked the ability to perform light work. (Tr. 156-58.)

The countervailing evidence presented by Dr. Mylod shows that Plaintiff would be able to sit close to six hours without pain if she did not move a lot. (Tr. 58-59.) However, taking into account subjective factors such as Plaintiff's own testimony as to her ability to sit, stand, or walk for an extremely limited amount of time without pain, Dr. Mylod opined that Plaintiff would be unable to sit for more than two hours in an eight-hour day. (Tr. 59.) Dr. Mylod also testified that Plaintiff's impairment did not meet or equal any medical listing regarding the orthopedic impairment. (Tr. 56.) Additionally, Dr. Mylod testified that he believed Plaintiff's condition was

-14-

unlikely to improve, and that Plaintiff should be limited to sedentary work.  (Tr. 59-64.)

Dr. Gallick, Plaintiff's treating physician, indicated in his report, dated August 12, 1996, that Plaintiff was unable to perform light work.  (Tr. 170.)  The ALJ noted that there are, indeed, at least two definitions of "light work" – one in a social security context and another in a worker's compensation context.  (Tr. 63.)  Specifically, the conversation on the record is as follows:

> ALJ: "[Dr. Gallick] said that Ms. Smith is completely unable to do even light duties for more than one or two hours.
>
> ATTY: Okay.
>
> ALJ: Does that not raise a question – could she do less than light?
>
> ATTY: Well it also –
>
> ALJ: Under the – which again under the Social Security concept there is something less than light which may not have been what he was aware of when writing this report . . . .  I would urge if the doctor could be more specific with . . . a residual functional capacity assessment placing this in the contexts of the Social Security evaluation purposes.

(Tr. 63.)  Presumably because Dr. Mylod was in agreement with the report presented by Dr. Gallick on Plaintiff's condition, ALJ Noorigian then asked Dr. Mylod whether additional evidence on the subject would affect his opinion; Dr. Mylod stated that it would.  (Tr. 63.)  The ALJ gave Plaintiff an opportunity to obtain clarification from Dr. Gallick and present it to the court.  (Tr. 64.)  As of the date of ALJ Noorigian's findings, she has not done so.  (Tr. 13.)

Dr. Mylod stated that he believes Plaintiff's main problem to be impingement on the

thecal[16] sac, suggesting radiculopathy,[17] yet as ALJ Noorigian noted, the latest evidence presented

by Dr. Gallick indicated only thoracic and shoulder strain, not lumbar or cervical strain, nor any

nerve root issues.  (Tr. 14.)  ALJ Noorigian pointed out that neither finding of Dr. Gallick is seen

in the reports of the other doctors.  (Tr. 182.)  ALJ Noorigian also noted that Dr. Mylod's

testimony that Plaintiff was unlikely to improve was contradicted by Dr. Gallick, who anticipated

a return to work date of September 1998 for Plaintiff.  (Tr. 14.)  Also, Dr. Schullman noted

within his report, a return to work date of February 1996.  (Tr. 154-55.)

ALJ Noorigian considered all of the medical evidence in the record and apportioned the

appropriate weight to the conclusions of each of the examining, treating, and consultive

physicians.  Specifically. ALJ Noorigian considered the testimony of Dr. Mylod who took into

account Plaintiff's subjective complaints to determine the level of her disability.  ALJ Noorigian

also considered Dr. Gallick's report, which indicated a return to work date of September 1998

and also indicated that Plaintiff could not perform light work.[18]  ALJ Noorigian further

contemplated the reports of Drs. Schullman and Brown who indicated no muscle spasm or any

other clinical abnormalities.  Additionally, ALJ Noorigian considered each doctor's analysis of

the objective medical evidence, the MRI, and determined that that objective evidence did not

support the subjective claims alleged by Plaintiff.  ALJ Noorigian's findings are supported by

substantial evidence and there is a sufficient explanation for the rejection of the contradicting

---

[16] Thecal means "pertaining to a theca or sheath."  Mosby's at 1698.

[17] Radiculopathy is "a disease involving a spinal nerve root."  Mosby's at 1459.

[18] Dr. Gallick's report, dated August 12, 1996, stated that Plaintiff was incapable of
performing even trivial activities.  (Tr. 170.)  However, a document filled out by Dr. Gallick,
dated September 15, 1997, indicated a return to work date for Plaintiff of September 15, 1998.

-16-

evidence.

**2.      ALJ Noorigian's Step Four Determination is Properly Supported by Substantial Evidence.**

Step four of the disability determination requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  Residual functional capacity is "that which an individual is still able to do despite the limitation caused by his or her impairment(s)."  Burnett, 220 F.3d at 121 (citation omitted).  Furthermore, Social Security Ruling 82-62 states:

> Determination of the claimant's ability to do past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reasons for his/her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplemental corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

(SSR 82-62, West's Social Security Reporting Service, Rulings 1975-1982).  Additionally, "past relevant work" is defined as work usually performed "within the last fifteen years or fifteen years prior to the date that disability must be established."  20 C.F.R §§ 404.1565, 416.969.  The work must have lasted long enough for the claimant to learn to do the job and meet the definition of substantial gainful activity.  Id.

Regarding Plaintiff's residual functional capacity, ALJ Noorigian relied on the medical evidence of Plaintiff's examining physicians to reach his determination that Plaintiff retains the functional capacity to perform the exertional demands of a wide range of light work.  Due to the confusion regarding Dr. Gallick's definition of the term "light work" and Plaintiff's failure to provide clarification of that definition, ALJ Noorigian was forced to conclude that Dr. Gallick in

-17-

fact cleared Plaintiff to perform at least sedentary work.  (Tr. 182.)  This is in direct contrast to

the report by Dr. Schullman, who cleared Plaintiff for moderate work.  (Tr. 154-55.)  Dr. Brown

found no spasm or significant limitation of motion.  Dr. Brown also reported that Plaintiff's fine

motor examination was normal, and that she had full active range of motion of the shoulders,

elbows, wrists, hips, knees, and ankles.  (Tr. 157.)  The Residual Physical Functional Capacity

Assessment in the record[19] indicates, inter alia, the ability to lift twenty-five pounds frequently

and fifty pounds occasionally, to sit or stand for about six hours in an eight hour workday, and

that the severity of the symptoms declared are disproportionate to that expected based upon the

medical evidence.[20]  (Tr. 159-66.)

It is the responsibility of the ALJ "to arrive at an independent judgment in light of

medical findings and other evidence regarding the true extent of the pain alleged by the

claimant."  Further, while subjective complaints of pain are considered, they are not enough to

establish disability.  42 U.S.C. § 423(d)(5)(A).  An impairment only qualifies as disabling if it

"results from anatomical, physiological or psychological abnormalities which are demonstrable

by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988) (citations omitted).  As such, the ALJ does

not simply defer to the findings of the medical professionals, nor does he rely solely on the

---

[19] It is not clear from the record who ordered or prepared the Assessment.

[20] Another Residual Physical Functional Capacity Assessment was added to the record on remand.  That Assessment was reviewed by Medical Consultant Burton Gillette, M.D., on July 31, 2001, and it also supports an ability to perform a full range of light work.  Specifically, the Assessment indicates, inter alia, the ability to lift fifteen pounds frequently and thirty pounds occasionally, to sit or stand for about six hours in an eight hour workday, and that the severity of the symptoms declared are disproportionate to that expected based upon the medical evidence. (Tr. 269-76.)

-18-

testimony of the Plaintiff.  He does, however, consider the findings and testimony in making his own determination of a claimant's disability.

ALJ Noorigian took into account the testimony of Dr. Mylod who opined that, considering both the objective and subjective evidence, Plaintiff would have trouble sitting or standing for more than two hours in an eight-hour workday.  (Tr. 13.)  The ALJ noted that considering the objective evidence alone, Dr. Mylod concluded that Plaintiff would be able to sit for six hours in an eight-hour workday.  Id.  The ALJ also noted that there was a general absence of clinical abnormalities in Dr. Brown's and Dr. Schullman's reports.  Id.  Considering these reports, as well as the objective evidence provided by Dr. Mylod, ALJ Noorigian concluded that Plaintiff could perform light work.  Id.  The evidence in the record substantially supports the ALJ's finding that Plaintiff retains the functional capacity to perform the demands of light work, pursuant to 20 C.F.R §§ 404.1567(b), 416.967(b).

ALJ Noorigian relied on Plaintiff's own testimony to determine the type of work Plaintiff still had the capacity to perform.  Plaintiff testified that prior to her accident, she worked as a cafeteria attendant mopping floors, stocking counters, and retrieving boxes weighing twenty-five pounds.  (Tr. 25-26.)  Plaintiff further stated that she was on her feet approximately seven hours in an eight-hour workday.  (Tr. 25.)  Plaintiff's work history also included work as a home health aide.  (Tr. 26.)

In determining that Plaintiff retained the ability to perform her past relevant work, ALJ Noorigian relied on Plaintiff's testimony and the Dictionary of Occupational Titles ("DOT") to demonstrate that Plaintiff could perform her past work as a cafeteria attendant.  (Tr. 14.)  The ALJ acknowledged that lifting of twenty-five pounds, as Plaintiff claims she did at her job, was

-19-

slightly more than light work.  Id.  However, ALJ Noorigian referred to the DOT definition of both light work[21] and medium work[22] and determined that Plaintiff maintained the capacity to perform her past work, which did not require the performance of work activities that were precluded by her impairments.

Although Dr. Mylod testified that Plaintiff would have trouble standing or sitting for more than six hours of an eight hour workday, (Tr. 58-59), light duty cafeteria work, such as the type of work Plaintiff previously performed, would not necessarily exceed a period of standing or sitting for six hours, pursuant 20 C.F.R §§ 404.1567(b), 416.967(b) (defining light work) and DOT §§ 311.677-010, 354.377-014 (defining light and medium work, respectively).  ALJ Noorigian had substantial evidence to support a finding that Plaintiff retained the ability to perform her past relevant work.  ALJ Noorigian's finding that Plaintiff retained the residual functional capacity to perform her past relevant work eliminated the need to perform step five in the evaluation.

---

[21] DOT § 311.677-010 defines "light work" as that which requires exertion "up to twenty pounds of force occasionally . . . and/or up to ten pounds of force frequently . . . and/or a negligible amount of force constantly."

[22] DOT § 354.377-014 defines "medium work" as that which requires exertion "twenty to fifty pounds of force occasionally . . . and/or ten to twenty-five pounds of force frequently . . . and/or greater than negligible up to ten pounds of force constantly."

## <u>CONCLUSION</u>

For the reasons above, this Court finds that substantial evidence exists to support the Commissioner's decision denying DIB benefits.  Thus, the Commissioner's decision is AFFIRMED.


Dated: July 25, 2005

         S/Joseph A. Greenaway, Jr.
         JOSEPH A. GREENAWAY, JR., U.S.D.J.